24-1553 Southern Iowa, United States v. Aldo Perez, Jr. Mr. Lance, we note you're appointed under the Criminal Justice Act and the court appreciates your service. That's correct. Our counsel may well be aware, but we have, I think, three different panels hearing 922G3 cases this week or maybe last week. We decided a little bit of consultation, that each panel would hear an argument. There may well be uncommon issues. We typically then coordinate in terms of having a lead panel chosen to work on the common issues for review by all three, independent review. So that process will probably happen. It does not mean, you should treat this argument as though you were stand-alone, because we do, this is our independent case and we will, whether we take the lead or not, we'll still give it the same individual consideration. Thank you for explaining that. I was curious as to how the court would be handling multiple of these appeals percolating up. May it please the court, Todd Lance, I am glad to be appointed for Aldo Cordova Perez in this appeal. When does the Second Amendment allow the government to disarm a regular user of marijuana like Mr. Cordova Perez? I submit the answer is that a 922G3 charge against a regular user of marijuana is unconstitutional if it does not involve someone using marijuana presently while they use or carry a firearm. That's the result the Fifth Circuit has reached in the Connolly and Daniels cases, which is as far as I can tell, the only circuit court to address an as-applied challenge involving use of marijuana in a 922G3 charge post-Bruin and post-Rahimi. Mr. Cordova Perez used marijuana, but not while he was using or carrying a firearm. Those are important record points here in that his firearm, as the pictures show and that testimony was clear, was stored on a bedroom closet shelf collecting dust. So you're making the distinction that I think the Fifth Circuit has done, which is distinguishing between possession and carry. Correct. And I think also the Beasley panel did that as well, recognizing the prior panel on this court addressing a facial challenge to 922G3. The court there recognized not only is marijuana different from modern synthetic drugs, methamphetamine and PCP and such, but also the court there recognized banning possession is different than carrying. So all of those authorities, I think, draw that distinction, yes. And that comes from the intoxication laws. There is a historical tradition addressing misuse of firearms while intoxicated with alcohol and as applied here, of course, they address the similar concern as 922G3, but it just doesn't apply to these facts because Mr. Cordova-Perez, there's no evidence he had actual possession of his firearm when he was arrested, when he was intoxicated. The record does show, and I would point to 445 in the transcript, that he would leave the house when he would smoke marijuana. If you look for the word smoke in the trial testimony, it shows he smoked at parks in the car. He had a sister and small children in his house. He smoked two to three times a day, but he maintained consistent employment for a period of three years. But even the most recent Fifth Circuit case, maybe Connolly as well, but they seem to leave open the option or the possibility that there may be someone who is such a frequent regular user of a controlled substance that they sort of fall into a historical analog of sort of the dangerously mentally impaired person. Would Mr. Cordova-Perez fall into that given the trial testimony, well, and his admissions that he's a daily user two to three times a day for the last, I can't remember how long. Do you think that this case might fall into that possibility? I don't know what you're speaking of, Your Honor, and I don't think the court said at what level it would be enough that somebody would be just basically permanently comparable to somebody who is mentally ill. The traditional- Until they stopped, essentially, using in that way. Yes. I mean, Mr. Cordova-Perez, as the testimony showed, made decisions that are certainly regrettable while he was intoxicated that day, but that had nothing to do with a weapon. And was a regular user, was sort of the steady- Two to three times a day, I think he described in the context of a day, I don't think that means he's permanently impaired. I think with- That's part of the question, right? I think that's part of the answer.  I don't think there was evidence that showed that he was permanently impaired. There was evidence presented at trial that he maintained a good-paying job, worked overtime, and was continually promoted at his job, and was succeeding, generally, as a young 22-year-old man. I don't think that this is- The record here supports something that is comparable to the mental illness situation in terms of that hypothetical that the Fifth Circuit left open, so to speak. And I think also the Veasley Court recognized that marijuana is different historically than other drugs, because marijuana consumption was a known issue at the founding. It was part of our- It was not part of our tradition to disarm people because they consumed marijuana. And that itself is persuasive information that this conviction is unconstitutional. The Connolly case, I think, is the most significant, most similar factual case that we have here. And in that case, the court found in a situation that there was no historical support for a law that bans possession of firearms for a regular user of marijuana. In that case, Ms. Connolly. Even though they found an array of unsecured firearms, even though she was a regular user of marijuana as a sleep aid and for anxiety, under those facts, it wasn't enough because they- I think the Fifth Circuit basically adopted this present use and present intoxication concept. In that case, I don't think they could meet either present use or that she was using or carrying a firearm. In our case, Mr. Cordova-Perez was using marijuana. He admitted as much, but it was miles away from where his firearm was standing. Your Honor, I asked before to reserve four minutes for rebuttal. I'm going to try to stick to that. I'll wrap up later. Thank you. Thank you. Mr. Call? Thank you. May it please the court, counsel. The district court judge here essentially concluded that 922G3 would be constitutional in all respects. I say that because Judge Loper wrote that provided that a defendant is found beyond a reasonable doubt to have possessed a firearm while being an unlawful user of a controlled substance, that comported with the Second Amendment. But the district court judge then went on to say even if we consider the particular circumstances In all respects, you mean facial and as applied? Yes. But even leaving open the possibility of an as applied challenge, the district judge went on to consider Mr. Cordova-Perez's conduct, and it was extraordinarily dangerous conduct while he was under the influence, admittedly, of marijuana. Marijuana that he was using two to three times a day. He engaged in a high speed chase with police. He rammed into one vehicle. He lost track of what he was doing and ran into a fire hydrant and then tried to flee the officers who were pursuing him. That taken together with the district court observation that Mr. Cordova-Perez went well past the casual user of marijuana supports the idea that this defendant was a danger to the community and that he could be disarmed consistent with the Second Amendment. Legislatures indeed have the power to prevent dangerous people from possessing guns. I think that's clear from Rahimi and even from the Fifth Circuit cases. Is marijuana different? Marijuana is not different. Marijuana is a controlled substance. It's unlawful. And what we have here is it's not in quotes just marijuana. It's the combination of the marijuana usage and possession of a firearm. And that if Congress was permitted to say that a individual may not choose to both possess a firearm and be an unlawful user of a controlled substance. We've mentioned in our brief that marijuana does cause certain impairments. We see it illustrated in this case. Aside from the fact that marijuana is an unlawful substance, which means that a person involved in marijuana would be involved in potentially illegal conduct in the drug trade, that in and of itself is another risk of dangerousness. Another point the government would rely on here is, and I think Mr. Lance alluded to this, the disability is temporary here. A person is guilty of 922 G3 if that person is an unlawful user of a controlled substance, so. But then once they're convicted and have a felony conviction, presumably, that temporal aspect, it's sort of an interesting twist on it, right? You're disarmed for this temporary period that you're using under your example using drugs. And if you stop, you can have a gun again. But not if in the meantime, you are convicted of a felony offense for that temporary period. That's true, I mean, if the person chooses to possess a firearm, hear an assault rifle while actively using a controlled substance, the defendant faces the risk of a felony conviction and would have that other disability. I did want to talk a little bit about the Daniels case. Daniels ultimately was decided on a jury instruction issue and the Fifth Circuit was concerned about the instruction that explained that the defendant need not be in possession of the firearm at the precise moment. At the relevant moment, and that instruction, although it's included in our Eighth Circuit pattern instructions. That instruction was not given in this case, presumably because it was unnecessary, given the abundant evidence that the defendant was, indeed, under the influence of marijuana at the time he constructively possessed the firearm. I also want to talk a little bit about Daniels and Connolly and why the government ultimately disagrees with the methodology. We suggest three analogs, including both mental illness and intoxication as well as the broader dangerousness, which to some degree encompasses those two specific examples. Daniels and Connolly seem to engage in almost a divide and conquer approach rather than taking them together as instructed by Rahimi. With Rahimi indicating, in that case, the surety laws and the going armed laws as a package provided the analog. I'd also point out, and consistent with this court's decision in Jackson, that there is no requirement for an individualized determination of dangerousness as to each person in the class of prohibited persons. Presuming that there is an adequate basis for disarming that class consistent with the nation's historical traditions. Here, Mr. Cordova-Perez presented a credible threat to the physical safety of others. The Congress was within its authority to enact 922 G3. While, as I said earlier, we believe that 922 G3 is constitutional in all respects. The court doesn't have to address that issue here because, as applied to Mr. Cordova-Perez's situation, he did present a danger to the community. Do I understand the government to agree that, or I think, that the unlawful drug users are part of the people for- Yes, yes, that is, and our litigating position has evolved, but yes, we do after Rahimi and after the positions that we took in Rahimi, that is our position here as well. If there are no further questions, the government would yield its time back and rely on the briefs. Thank you. Verbal? Thank you, Your Honor. The government in its briefs and today advances this dangerous-based disarmament concept as a justification of the Second Amendment. The Fifth Circuit rejected that squarely and conally and found there's no historical evidence for a tradition of disarming people in such broad strokes. To quote the Fifth Circuit, not one piece of historical evidence suggests that at the time they ratified the Second Amendment, the founders authorized Congress to disarm anyone it deemed dangerous. Instead, the court goes on to look at specific laws that existed at that time, and it concluded for things like laws disarming political dissidents, there wasn't a group who was comparable to marijuana users. The government's approach creates a level of generality problem, to quote Justice Barrett in her concurring opinion in Rahimi, and that they suggest a theory that would allow disarmament of virtually anyone that the government determines could be dangerous. There's no principled limitation to that, and it would be inconsistent with the focus on historical evidence in Bruin. That is, Bruin and Rahimi set up this why and how focus, where we look at historical regulations and they must be sufficiently analogous. From there, we can derive certain principles, but we don't start with principles as the government posits in this case. Only if the why and the how match can we say that there is a historical tradition that supports, under the Second Amendment, the modern regulation. And that's, in Bruin, really focused on why that need for historical evidence, and Justice Thomas' opinion was critical in that piece. Judge Kelly, you raised this question about the penalty, which I think is something I thought of coming into this, and I haven't seen a court really address, and that is, in Rahimi, Justice Roberts' opinion notes that when you're comparing whether the burden is analogous, relevantly similar, you have to also look at the penalty for what will happen if there's a violation. And here, this isn't just a temporary violation for Mr. Cordova-Perez for smoking marijuana and having a gun on his closet. Permanently, he is disarmed because he is now a convicted felon. And so there is a twist that the government has tried to put on this to say that when somebody can just stop using drugs, they can then possess their guns again. That's not true for Mr. Cordova-Perez. He is permanently disarmed. That is relevant because when we compare the founding tradition for mental illness confinement statutes, as the court enviesly acknowledged, there was a belief that mental illness was not permanent at the founding. And when somebody's mental illness had, somebody had been treated or recovered or had that changed, they could regain their firearm rights. That's part of the burden of how mental illness confinement laws operated. That's totally different for 922-G3 because a violation of this is a permanent disarmament. And I think that's a nuance in the historical comparisons that hasn't been drawn enviesly. And it really only comes to light because of the Rahimi opinion and particularly Justice Roberts' observation that you have to look at the penalty when doing this comparison as well. We submit for reasons stated in our briefs stated today, that Mr. Cordova-Perez' conviction under 922-G3 is unconstitutional and should be reversed. Thank you, Your Honors, for your time. Thank you, Counsel. Thank you for, you didn't abbreviate your arguments, but you did them efficiently, and that's, I think, helpful under the circumstances. Because we've seen these issues before and they keep evolving and changing. And tomorrow they may change again, and who knows. But we will take this under advisement. And as I say, we will be coordinating with the other panels. But ultimately, our decision on this case will be on this case. I don't think we have any non-common issues here, but apparently at least one of the other panels may. So it'll hopefully not take an inordinate amount of time to get ourselves coordinated. Something out the door. But then the Supreme Court may change the rules next month. So we all watch and see. But again, thank you. It's been well argued.